# 24-1163-cv

## United States Court of Appeals

*for the*

## Second Circuit

---

VICTOR CHEONG,

*Plaintiff-Appellant,*

— v. —

THE BANK OF EAST ASIA, LTD., THE BANK OF EAST ASIA, LTD.,
NEW YORK BRANCH,

*Defendants-Appellees.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLEES

LORI D. BAUER
LAURA VICTORELLI
JACKSON LEWIS P.C.
*Attorneys for Defendants-Appellees*
666 Third Avenue, 28th Floor
New York, New York 10017
(212) 545-4000

CP COUNSEL PRESS    (800) 4-APPEAL • (331783)

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

-----------------------------------------------------------------X

VICTOR CHEONG,

                                    Civ. No.: 24-1163-cv

                Plaintiff-Appellant,

   -against-

THE BANK OF EAST ASIA, LTD. and
THE BANK OF EAST ASIA, LTD.,
NEW YORK BRANCH,

                Defendants-Appellees,

-----------------------------------------------------------------X

## DEFENDANTS-APPELLEES' RULE 26.1
## CORPORATE DISCLOSURE STATEMENT

       As required by FRAP 26.1, Defendant-Appellee The Bank of East Asia,

Ltd. New York Branch states that it is a limited company and is a wholly-owned

branch of The Bank of East Asia, Ltd., which is also a limited company.

                JACKSON LEWIS P.C.

                666 Third Avenue, 29th Floor
                New York, New York 10017

         By:   */s Lori D. Bauer*_____
                Lori D. Bauer
                Laura A. Victorelli

Dated:   August 7, 2024         ATTORNEYS FOR
         New York, New York    DEFENDANTS-APPELLEES

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

COUNTER-STATEMENT OF ISSUES ................................................ 1

INTRODUCTION .............................................................................. 1

COUNTER-STATEMENT OF THE FACTS AS PLED IN PLAINTIFF'S
SECOND AMENDED COMPLAINT .................................................... 2

LEGAL ARGUMENT ........................................................................ 8

I.   The District Court Properly Dismissed Plaintiff's Allegations
     Arising Before November 5, 2020 as Time-Barred ....................... 9

     A.   The Continuing Violation Doctrine is Not Applicable to
          Plaintiff's Allegations, which are Comprised of Discrete,
          Unrelated Incidents ............................................................ 10

     B.   Plaintiff's Claims are Not Part of a Policy or Mechanism of
          Discrimination .................................................................... 14

II.  The District Court Properly Dismissed Plaintiff's National Origin,
     Sexual Orientation and Age Discrimination Claims ..................... 16

     A.   Plaintiff's National Origin Discrimination Claims are
          Predicated Solely on His Baseless Belief that All Hong Kong
          Citizens and Companies Discriminate Against Filipinos ......... 19

          i.    George Benakis' Promotion, Alone, Fails to Give Rise
                to an Inference of Discrimination .................................. 20

          ii.   Ms. Sin's Comment About Filipino Borrowers
                Constitutes a Stray Remark and is Not Indicative of
                Discrimination Against Plaintiff .................................... 22

          iii.  Plaintiff Cannot Rely on the Alleged Treatment of his
                Non-Similarly Situated Coworkers to Establish a Claim
                of National Origin Discrimination .................................. 25

     B.   The District Court Correctly Concluded that Plaintiff's
          Subjective Interpretation About the Innocuous Comments
          Made by Maggie Wong and Plaintiff's Coworkers are
          Insufficient, as a Matter of Law, to State a Plausible Claim of
          Sexual Orientation Discrimination ...................................... 27

C.   Plaintiff's Allegations Do Not Demonstrate a Conspiracy of Age Discrimination at BEA ...............................................................29

D.   Plaintiff Cannot Rely on His Lack of Promotion to Demonstrate Discriminatory Animus Because He Did Not Apply For, or Express Any Interest in, the Positions Identified in the SAC ...............................................................34

     i.   Plaintiff Never Applied for or Was Rejected from Any of the Roles Identified in the SAC ............................................36

     ii.  Plaintiff Fails to Plausibly Allege that He Was More Qualified than the Individuals Promoted Over Him .................38

III.  The District Court Properly Dismissed Plaintiff's Retaliation Claims, Since the Progressive Performance Management Issued to Plaintiff Commenced *Years* Before His Engagement in Protected Activity ..............................................................................................39

CONCLUSION ......................................................................................45

# TABLE OF AUTHORITIES

**Cases:**                                             **Page(s)**

Al-Qadaffi v. Servs. for the Underserved,
632 Fed. App'x 31 (2d Cir. 2016) ....................................................30

Amtrak v. Morgan,
536 U.S. 101 (2002) ........................................................... 9, 12, 41

Anderson v. N.Y.C. Dep't of Fin.,
No. 19-cv-7971 (RA), 2020 U.S. Dist. LEXIS 70428 (S.D.N.Y. Apr. 21, 2020) ............................................................................................13

Ashcroft v. Iqbal,
556 U.S. 662 (2009) ..........................................................................17

Ass'n Against Discrimination in Emp., Inc. v. City of Bridgeport,
647 F.2d 256 (2d Cir. 1981) ............................................................15

Avgerinos v. Palmyra-Macdedon Cent. Sch. Dist.,
690 F. Supp. 2d 115 (W.D.N.Y. 2010) ............................................33

Bell Atlantic Corp. v. Twombly,
550 U.S. 544 (2007) ..........................................................................17

Beverly v. N.Y.C. Health & Hosps. Corp.,
No. 18-cv-8486 (ER), 2020 U.S. Dist. LEXIS 176741 (S.D.N.Y. Sept. 25, 2020) ..................................................................................37

Blake v. Bronx Leb. Hosp. Ctr.,
No. 02-cv-3827 (CMB), 2003 U.S. Dist. LEXIS 13857 (S.D.N.Y. Aug. 11, 2003) ............................................................... 10, 13, 15

Canady v. U of R/Strong Mem'l Med. Ctr.,
No. 21-cv-2150, 2022 U.S. App. LEXIS 35263 (2d Cir. Dec. 21, 2022) ..........44

Castagna v. Luceno,
No. 09-cv-9332 (CS), 2011 U.S. Dist. LEXIS 45567 (S.D.N.Y. Apr. 26, 2011) ..............................................................................................33

Cayemittes v. City of N.Y. Dep't of Hous. Pres. & Dev.,
641 Fed. App'x 60 (2d Cir. 2016) ....................................................44

Chung v. City Univ. of N.Y.,
605 Fed. App'x 20 (2d Cir. 2015) ........................................... 39, 44

Cook v. Pan Am. World Airways, Inc.,
    771 F.2d 635 (2d Cir. 1985).............................................................. 14, 15

Criley v. Delta Air Lines, Inc.,
    119 F.3d 102 (2d Cir. 1997).................................................................32

Dunaway v. MPPC Corp,
    669 Fed. App'x 21 (2d Cir. 2016) .......................................................32

Dziedzic v. State Univ. of N.Y. at Oswego,
    648 F. App'x 125 (2d Cir. 2016) ........................................................13

Farooq v. City of N.Y.,
    No. 20-cv-3185, 2022 U.S. App. LEXIS 6739 (2d Cir. Mar. 16, 2022) ............42

Felton v. Monroe Cmty. Coll.,
    579 F. Supp. 3d 400 (W.D.N.Y. 2022).................................................20

Fleming v. MaxMara USA, Inc.,
    371 Fed. App'x 115 (2d Cir. 2010) .....................................................28

Fleurentin v. N.Y. City Health & Hosps. Corp.,
    No. 18-cv-05004 (AMD)(RLM), 2020 U.S. Dist. LEXIS 908 (E.D.N.Y.
    Jan. 3, 2020) ........................................................................... 34, 38

Freud v. N.Y. Dep't of Educ.,
    No. 1:21-cv-2281 (MKV), 2022 U.S. Dist. LEXIS 54353 (S.D.N.Y.
    Mar. 25, 2022)......................................................................... 11-12

Freund v. Cnty. Of Nassau,
    No. 15-cv-6180, 2017 U.S. Dist. LEXIS 26306 (E.D.N.Y. Feb. 24,
    2017) ...............................................................................................43

Gross v. NBC,
    232 F. Supp. 2d 58 (S.D.N.Y. 2022) ..................................................13

Hollington v. CDM Fed. Programs Corp.,
    No. 22-cv-4940 (ER), 2023 U.S. Dist. LEXIS 40887 (S.D.N.Y. Mar. 10,
    2023) .................................................................................. 36, 38, 42

Lambert v. Genesee Hosp.,
    10 F.3d 46 (2d Cir. 1993)............................................................. 13, 14

Lees v. Graduate Ctr.,
    696 Fed. App'x 530 (2d Cir. 2017) .................................................. 40, 44

Little v. NBC,
    210 F. Supp. 2d 330 (2d Cir. 2010) .............................................. 10, 12

Littlejohn v. City of New York,
    795 F.3d 297 (2d Cir. 2015)..................................................... 18, 26

Lively v. WAFRA Inv. Advisory Grp., Inc.,
    No. 19-cv-3257 (JPO), 2020 U.S. Dist. LEXIS 126390 (S.D.N.Y.
    July 17, 2020)...................................................................30

Lombardi v. Choice Women's Med. Ctr., Inc.,
    No. 15-cv-4715 (PUG)(JLC), 2017 U.S. Dist. LEXIS 11935 (E.D.N.Y.
    Jan. 26, 2017)...................................................................23

Lomonoco v. St. Anne Inst.,
    768 Fed. App'x 43 (2d Cir. 2019) .......................................31

Lopez v. N.Y.C. Dep't of Educ.,
    No. 17-cv-9205 (RA), 2020 U.S. Dist. LEXIS 133548 (S.D.N.Y.
    July 28, 2020)................................................................ 35, 37

Luka v. Bard. Coll.,
    263 F. Supp. 3d 478 (S.D.N.Y. 2017) .................................28

Mandala v. NTT Data, Inc.,
    975 F.3d 202 (2d Cir. 2020)...............................................17

Marcus v. Leviton Mfg. Co.,
    661 Fed. App'x 29 (2d Cir. 2016) .......................................30

McDonnell Douglas Corp. v. Green,
    411 U.S. 792 (1973)..........................................................18

McKnight v. Middleton,
    699 F. Supp. 2d 507 (E.D.N.Y. 2010), aff'd,
    434 Fed. App'x 32 (2d Cir. 2011) .......................................43

Muka v. Murphy,
    358 Fed. App'x 239 (2d Cir. 2009) .....................................43

Nunez v. Lima,
    762 Fed. App'x 65 (2d Cir. 2019) .......................................41

Paupaw-Myrie v. Mount Vernon City Sch. Dist.,
    No. 21-cv-11237 (CS), 2023 U.S. Dist. LEXIS 15505 (S.D.N.Y.
    Jan. 30, 2023)...................................................................28

Perry v. NYSARC, Inc.,
    424 Fed. App'x 23 (2d Cir. 2011) .......................................42

Phillips v. Cent. N.Y. Psychiatric Ctr.,
    No. 6:16-cv-0219, 2017 U.S. Dist. LEXIS 103313 (N.D.N.Y. July 5,
    2017) .......................................20

Phillips v. Centrix, Inc.,
    354 F. App'x 527 (2d Cir. 2009) .......................................23

Pompey-Primus v. Success Academy Charter Sch., Inc.,
    No. 21-cv-3981 (KPF), 2022 U.S. Dist. LEXIS 29313 (S.D.N.Y.
    Feb. 17, 2022) .......................................28

Pustilnik v. Battery ParkCity Auth.,
    No. 9:18-cv-215, 2019 U.S. Dist. LEXIS 208527 (S.D.N.Y. Dec. 3,
    2019) .......................................31

Rivera v. JP Morgan Chase,
    815 Fed. App'x 603 (2d Cir. 2020) .......................................35

Roenick v. Flood,
    No. 20-cv-7213 (JPC), 2021 U.S. Dist. LEXIS 108165 (S.D.N.Y.
    June 9, 2021) .......................................22

Rowe v. N.Y. State Dep't of Taxation & Fin.,
    786 Fed. App'x 302 (2d Cir. 2019) .......................................34

Russo v. N.Y. Presbyterian Hosp.,
    972 F. Supp. 2d 429 (E.D.N.Y. 2013) .......................................44

Semerano v. Woodner Co.,
    No. 17-cv-8535 (ER), 2018 U.S. Dist. LEXIS 110566 (S.D.N.Y. July 2,
    2018) .......................................36

Sethi v. Narod,
    12 F. Supp. 3d 505 (E.D.N.Y. 2014) .......................................38

Slattery v. Swiss Reinsurance Am. Corp.,
    248 F.3d 87 (2d Cir. 2011).......................................41, 44

Smith v. Bronx Cmty. Coll. Ass'n,
    No. 16-cv-3779 (JMF), 2017 U.S. Dist. LEXIS 25632 (S.D.N.Y.
    Feb. 23, 2017) .......................................28

Spires v. Metlife Grp., Inc.,
    No. 18-cv-4464 (RA), 2019 U.S. Dist. LEXIS 160181 (S.D.N.Y.
    Sept. 18, 2019) ..........................................................................31

Sprint/United Mgmt. Co. v. Mendelsohn,
    552 U.S. 379 (2008)...................................................................25

Summa v. Hofstra Univ.,
    708 F.3d 115 (2d Cir. 2013).......................................................42

Vega v. Hempstead Union Free School Dist.,
    801 F.3d 72 (2d Cir. 2015)............................... 19-20, 28, 39

Weeks v. New York State (Div. of Parole),
    273 F.3d 76 (2d Cir. 2001).........................................................41

Williams v. Victoria's Secret,
    2017 U.S. Dist. LEXIS 45813 (S.D.N.Y. Mar. 28, 2017) ...................23

**Statutes & Other Authorities:**

29 U.S.C. § 626(d) ...........................................................................9

42 U.S.C. § 2000e-5(e)(1).................................................................9

Fed. R. Civ. P. 12(b)(6).....................................................................44

## COUNTER-STATEMENT OF ISSUES

1. Did the District Court properly dismiss Plaintiff Victor Cheong's ("Plaintiff's") claims arising before November 5, 2020 as time-barred under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act ("ADEA")?

2. Did the District Court properly dismiss Plaintiff's Second Amended Complaint ("SAC") for failure to plausibly allege that he was discriminated against based on his national origin, sexual orientation and age under Title VII and the ADEA?

3. Did the District Court properly dismiss Plaintiff's SAC for failure to plausibly allege that he was retaliated against under Title VII and the ADEA?

## INTRODUCTION

It is black letter law that a plaintiff raising claims under Title VII, the ADEA and any other anti-discrimination statute must, at the very least, allege timely allegations suggesting that the adverse actions taken against them during their employment were in some way connected to their protected characteristics. Simply having a subjective feeling of discriminatory treatment is insufficient to state a plausible claim for relief – no matter the number of allegations or sheer length of a complaint. In cases where such allegations all rely on some vague assumption of discriminatory or retaliatory animus, the claims must be dismissed.

1

In the present action, Victor Cheong relies exclusively on such subjective beliefs, as well as the offensive accusation that all people from Hong Kong, without exception, discriminate against older, gay Filipino men. Plaintiff attributes each adverse action taken against him to this supposed region-wide discriminatory animus. The District Court saw through this absurd assertion and properly concluded that Plaintiff's nearly 400-paragraph SAC was insufficient, as a matter of law, to plausibly state a claim for relief. For the reasons set forth in the District Court's decision – and as elaborated below – this decision should be affirmed.

## COUNTER-STATEMENT OF THE FACTS AS PLED IN PLAINTIFF'S SECOND AMENDED COMPLAINT

In his retelling of the long-winded allegations contained in the SAC, Plaintiff distorts his original allegations and omits several pieces of the SAC, many of which actually contradict his claims of discrimination and retaliation. In issuing its decision, the District Court relied on the *entirety* of Plaintiff's SAC, including those allegations which cut against Plaintiff's claims and have been conveniently erased by Plaintiff on appeal. Given the importance of the facts *as pled* in determining the plausibility of Plaintiff's claims on a motion to dismiss, a comprehensive statement of facts is set forth as follows.[1]

---

[1] As is required at the pleading stage of the litigation, and solely for the purposes of arguing Defendants' Motion to Dismiss now on appeal, Defendants accept as true Plaintiff's allegations in the Original Complaint, First Amended Complaint ("FAC") and SAC but reserve the right to

In or around April 2016, BEA's then-General Manager of the New York Branch, Victor Li, hired Plaintiff as the Head of the Business Development Department ("BDD"). A-14 at ¶ 37.[2] According to Plaintiff, Victor Li is part of the "ruling Li family" in Hong Kong, which controls BEA. A-12, 17 at ¶¶ 27, 58. As the Head of the BDD, Plaintiff's main responsibility was to originate commercial real estate loans. A-14 at ¶ 38.

In June 2017, BEA announced that the Head of the China branch's BDD, Maggie Kar-Lai Wong (50 years-old), would be transferred to New York to serve as the Senior Vice President ("SVP") of China business, effective August 10, 2017. A-15, 17 ¶¶ 49, 57. In this role, Ms. Wong was primarily responsible for supporting BEA's opportunities with China-based borrowers. A-16 at ¶ 51. Plaintiff feels that he was more qualified than Ms. Wong for this position because Ms. Wong does not have a graduate degree "compar[able] to [Plaintiff's] Harvard MBA." Id. at ¶ 55. While Plaintiff is admittedly unaware of Ms. Wong's education or banking background, he nevertheless "assume[s] she has a higher education degree from somewhere in Hong Kong." Id. According to Plaintiff, Ms. Wong was only given the newly created SVP position because she is "well connected to Brian David Li Man-bun of the ruling Li family." A-17 at ¶¶ 58-59.

---

controvert such allegations (which Defendants expressly deny) in any further proceedings in this matter.

[2] References to the Joint Appendix are cited as (A-___).

3

In April 2018 – approximately eight months after Ms. Wong's transfer to New York – Victor Li circulated a new organizational chart, identifying Ms. Wong as the head of New York's China/Corporate Business Department and changed her title to "SVP & Head of China Business & Corporate Lending."  A-17-18 at ¶¶ 61, 63.  Under this new structure, Plaintiff's direct reports began reporting to Ms. Wong, and Ms. Wong assumed a large portion of Plaintiff's administrative duties, including assisting the branch to achieve Key Performance Indicators ("KPIs") and budget; reviewing credit proposals and status reports; and heading Human Resources ("HR") and administrative issues within the department.  A-18 at ¶ 63.  Plaintiff, meanwhile, remained the Head of BDD and was given higher loan targets.  A-18-19 at ¶¶ 62,65.  Ms. Wong allegedly used her new position to prioritize her own deals over Plaintiff's, which made it difficult for Plaintiff to achieve these higher goals.  A-19 at ¶ 69.  According to Plaintiff, this led to his receiving a rating of "3" out of "5" on his 2018 performance review – instead of the "4s [sic] and 5s [sic] he had enjoyed the prior years."  Id. at ¶ 67.  Ms. Wong also allegedly criticized Victor Li to the Li family in Hong Kong, even though (according to Plaintiff) Mr. Li was from Hong Kong and a member of that family.  A-19-20 at ¶ 70.

More than a year and a half after Ms. Wong's appointment to the SVP role, Victor Li retired from his General Manager position in February 2020, and BEA selected Ms. Wong to fill that position.  A-20 at ¶ 71.  After this appointment,

Plaintiff received a "2" out of "5" on his performance review, and Ms. Wong informed Plaintiff that he would not be considered for her recently vacated SVP role. A-21 at ¶¶ 77-79. Instead, Ms. Wong hired Howard Hsu (Taiwanese)[3] to fill the Head of Corporate & Real Estate Business position, which was apparently the same role previously held by Ms. Wong but with a different title. A-23-24 at ¶ 97. Significantly, *Mr. Hsu is only one year younger than Plaintiff*. A-24 at 100. Although Plaintiff provides no details about Mr. Hsu's education, banking background or business experience, he once again asserts that he was more experienced (and thus more qualified) than Mr. Hsu. Id. at ¶ 101. Three months later, on May 18, 2020, Mr. Hsu issued Plaintiff's 2020 performance goals, which Plaintiff felt were unfair given the impact of Covid-19 on New York's real estate market. A-25 at ¶¶ 106-08. Although Plaintiff was able to reach this goal by more than $35,000,000, Ms. Wong allegedly refused to recognize some of these loans and issued Plaintiff a "1" out of "5" on his performance review in January 2021. A-30-31 at ¶¶ 149, 154-55.

---

[3] Plaintiff later contradicts this allegation and claims that Mr. Hsu was hired by Victor Li prior to Mr. Li's retirement in February 2020. A-26 at ¶ 115. This is simply an attempt by Plaintiff to obfuscate his own allegations. Indeed, if Mr. Li truly hired Mr. Hsu and passed over Plaintiff for the role, then Plaintiff must admit that Mr. Li – who is older than Plaintiff and a so-called "American Born Chinese" – passed him over for promotion in favor of Mr. Hsu. If, on the other hand, Ms. Wong hired Mr. Hsu, Plaintiff must admit that Ms. Wong hired someone who was only a year younger than Plaintiff and a "non-Hong Konger." For purposes of this appeal, Defendants will assume that Ms. Wong hired Mr. Hsu.

In February 2021, Ms. Wong hired George Benakis (American) to fill the SVP & Head of Corporate & Real Estate Business position recently vacated by Mr. Hsu. A-31 at ¶ 160. Once again, Plaintiff felt that Mr. Benakis was "woefully less qualified" than him for the role because Mr. Benakis has a law degree – as compared to Plaintiff's MBA from Harvard. A-32 at ¶¶ 164, 167.

On April 30, 2021, Ms. Wong placed Plaintiff on a performance improvement plan ("PIP"), which Plaintiff felt was unfair. A-32-33 at ¶¶ 169, 174-75. When Plaintiff refused to sign this PIP, Ms. Wong allegedly stated that people were "talking behind [Plaintiff's] back," which Plaintiff inexplicably interpreted as a reference "to his being gay and threatening him to sign the PIP or be outed."[4] A-35 at ¶ 184. The following week, Ms. Wong issued a new organizational chart, changing Plaintiff's title to "SVP & Senior Business Manager," which Plaintiff saw as a demotion – even though Plaintiff had admittedly not been performing department head responsibilities for three years by that point, and maintained the "SVP"-level title. A-17-18, 34 at ¶¶ 61, 179.

On May 6, 2021, Plaintiff complained to HR, saying that he was issued the PIP "because [he is] an older, single[5] man from the Philippines." A-36 at ¶¶ 186-

---

[4] It is unclear how Plaintiff would even be "outed" by Ms. Wong, since all of his sexual orientation allegations prior to this point (such the failure to promote Plaintiff to the SVP position held by heterosexual individuals, including Ms. Wong, Mr. Hsu and Mr. Benakis) are premised on the notion that BEA employees were aware of Plaintiff's sexual orientation.

[5] Plaintiff did not say in this internal complaint that he was an "older, *gay* man" or an "older, *homosexual* man." Rather, he explicitly referred to himself as an "older, *single* man." This is

87.  Plaintiff's internal complaint and his continued pushback led Ms. Wong to remove the PIP.  A-39-40 at ¶¶ 195-96.  Thereafter, HR conducted an investigation into Plaintiff's discrimination claims and found his allegations to be unsubstantiated. A-40 at ¶ 198.  According to Plaintiff, Ms. Wong retaliated against him for making this complaint by telling Plaintiff that Benakis was "mainly responsible for soliciting new business for the department," while simultaneously maintaining Plaintiff's reduced Business Manager title.  A-37-39 at ¶¶ 191-95.  Significantly, Plaintiff had been assigned to the Business Manager role on May 3, 2021 – *before* Plaintiff submitted his internal complaint to HR.  A-34 at ¶ 179.

Four months later, on September 2, 2021, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC").  A-41 at ¶ 205.  Plaintiff claims that BEA retaliated against him by excluding Plaintiff from a company-wide employee survey in September 2021; placing "impediments" on Plaintiff originating loans "in late 2021 and early 2022"; and issuing Plaintiff a performance rating of "2" on his next performance evaluation in January 2022.[6]  A-41-44 at ¶¶ 207, 210, 216, 224, 230, 237; see also Dkt. No. 18 at p. 57.

---

presumably because no one at BEA, including Ms. Wong or HR, were aware of his sexual orientation at the time he made his internal complaint.
[6] Plaintiff claims that this performance rating stemmed from Benakis' refusal to allow Plaintiff to "enter figures in the Financial Measures section of his performance review within five months," which resulted in the reduction of "Cheong's origination figure by $75 million."  See Dkt. No. 18.1 at p. 57.

A year after Plaintiff filed his EEOC Charge, in September 2022, BEA announced that Ms. Wong would be retiring and would be replaced by Francis Wong (51-years old and originally from Hong Kong).  A-44-45 at ¶¶ 240-45.  On October 27, 2022, Plaintiff filed his Original Complaint with the District Court.  A-45 at ¶ 248.  Plaintiff claims that Mr. Wong and Mr. Benakis retaliated against him for the filing of the Original Complaint by issuing Plaintiff yet another "2" on his January 2023 performance review.  A-47 at ¶ 264.

Four months later, on April 4, 2023, BEA announced several promotions within the organization, including James Hua (Taiwanese), Colin Cheong Tan (Malaysian), Helen Shek (Chinese) and Ada Lau (Chinese).  A-56-57 at ¶¶ 323-31.  Plaintiff does not claim that he was interested in, qualified for or applied to these positions.  The following day, on April 5, 2023, Plaintiff filed his First Amended Complaint.  A-57 at ¶ 332.  On April 25, 2023, Plaintiff was terminated from his employment after he refused to take on additional job duties due to BEA's overall reduction in Corporate Real Estate Loans.  A-57-58 at ¶¶ 332-40.

## <u>LEGAL ARGUMENT</u>[7]

The District Court used sound reasoning in digging through the copious number of allegations in Plaintiff's SAC, finding that: 1) a large portion of Plaintiff's

---

[7] Defendants do not dispute the jurisdictional statement or the standard of review as set forth in Plaintiff's brief.

allegations are time-barred; 2) Plaintiff's allegations fail to establish plausible claims of national origin, sexual orientation and age discrimination; and 3) Plaintiff's retaliation claims – including those related to his termination – fail as a matter of fact and law.  For the reasons set forth in detail below, these findings should be affirmed in full.

**I.    The District Court Properly Dismissed Plaintiff's Allegations Arising Before November 5, 2020 as Time-Barred.**

Individuals seeking relief under Title VII and the ADEA must exhaust their administrative remedies by filing a Charge of Discrimination with the EEOC, prior to filing their claims in federal court.  See 42 U.S.C. § 2000e-5(e)(1) (Title VII); 29 U.S.C. § 626(d) (ADEA).  To be timely, a Charge of Discrimination must be filed within 300 days of the alleged discriminatory act.  See Amtrak v. Morgan, 536 U.S. 101, 108-09 (2002).  Allegations arising outside the statutory period "are untimely [] and no longer actionable." Id. at 110.

Plaintiff's allegations span ***more than five (5) years*** and involve a number of different actors, offices and departments.  Although Plaintiff alleges that he was repeatedly given higher performance targets, passed over for promotion and generally treated less well than his heterosexual, younger coworkers from Hong Kong beginning as early as 2017, he failed to file a Charge with the EEOC until September 1, 2021.  Plaintiff's allegations arising before November 5, 2020 (i.e.,

300 days prior to the filing of the EEOC Charge) are therefore untimely and were properly dismissed by the District Court.

Plaintiff now argues on appeal that his allegations arising before November 5, 2020 should be considered timely under the "continuing violation doctrine." Plaintiff seems to acknowledge how sparingly the Second Circuit applies this doctrine, noting that "'courts in the Second Circuit have viewed continuing violation arguments with disfavor.'" See Dkt. No. 18.1 at p. 42 (quoting Blake v. Bronx Leb. Hosp. Ctr., No. 02-cv-3827 (CMB), 2003 U.S. Dist. LEXIS 13857 (S.D.N.Y. Aug. 11, 2003)). This is an understatement. Indeed, the continuing violation doctrine is *__heavily disfavored__* by this Court. Significantly, this and "courts of this Circuit have generally been *__loath__* to invoke [it] and will apply it only upon a showing of *__compelling circumstances__*." Little v. NBC, 210 F. Supp. 2d 330, 366 (2d Cir. 2010) (emphasis added).

Undeterred by the Second Circuit's expressed distaste for this doctrine, Plaintiff nevertheless argues that it should be applied in the present action. As explained in detail below, Plaintiff's allegations fall far short of establishing such "compelling circumstances."

**A.** **__The Continuing Violation Doctrine is Not Applicable to Plaintiff's Allegations, which are Comprised of Discrete, Unrelated Incidents.__**

The District Court properly found the continuing violation doctrine inapplicable to the present action because Plaintiff's allegations arising outside of

the statute of limitations are far too attenuated from Plaintiff's timely allegations to be considered part of a continuing violation. Specifically, the District Court properly held that "Cheong's pleadings only indicate **discrete incidents**," including "his failure to be considered for various positions at BEA, poor performance reviews, [and] assignment of higher performance targets, **which are all discrete actions that occurred on separate dates and were not part of a longstanding practice**." See A-191-92 (emphasis added).

On appeal, Plaintiff once again asks the Court to apply the continuing violation doctrine to these various, discrete actions occurring prior to the statute of limitations, including his allegations that: Maggie Wong was hired as the SVP of China Business over him "in the first quarter of 2017" (A-17 at ¶ 56); his direct reports and job duties were transferred to Ms. Wong on April 19, 2019 (A-17-18 at ¶¶ 61-63); he was given a higher performance target in 2018 (A-18-19 at ¶ 65); he received lower performance ratings in 2018 and 2019 (A-19, 21 at ¶¶ 67, 77); Ms. Wong told him people were "talking behind his back" in January 2020 (A-21 at ¶ 80); and Defendants promoted Mr. Hsu over him in February 2020 (A-23-24 at ¶ 97).

These acts constitute nothing more than "a laundry list of discrete acts, untethered from any relation to each other" and which are not sufficiently related to form a continuing violation. Freud v. N.Y. Dep't of Educ., No. 1:21-cv-2281

(MKV), 2022 U.S. Dist. LEXIS 54353, at *18-19 (S.D.N.Y. Mar. 25, 2022). Indeed, all of these acts were allegedly perpetrated by a variety of individuals from different offices, with no connection whatsoever to one another. Specifically, Plaintiff alleges that ***Brian David Li Man-bun*** from BEA's Hong Kong Office transferred Ms. Wong to New York in the newly created SVP of China Business role (A-17 at ¶ 59); ***Victor Li*** sent the new organizational chart, under which Ms. Wong was to oversee Plaintiff's prior direct reports and job duties (A-17-18 at ¶ 61); some unidentified individuals assigned Plaintiff an increased performance target in 2018 (A-18 at ¶ 65), as well as lower performance ratings in 2018 and 2019 (A-19, 21 at ¶¶67, 77); and ***Ms. Wong*** remarked that people were talking behind Plaintiff's back and promoted Mr. Hsu over Plaintiff in early 2020 (A-21, 23-24 at ¶¶ 80,97).

Since the time-barred actions were allegedly perpetrated by different individuals and were distinctly discrete in nature, they cannot form the basis of a continuing violation. See Morgan, 536 U.S. at 114-15 (explaining that "acts such as termination, failure to promote, denial of transfer, or refusal to hire" are clearly discrete adverse actions that fail to constitute a continuing violation under the law); Little, 210 F. Supp. 2d at 367-68 (finding that the plaintiff failed to establish a continuing violation where the conduct was initially made by one manager in 1986 and then by a number of different managers on different shows through the date of his complaint, and that "transfers, demotions, failure to compensate adequately and

failure to promote do not constitute a continuing violation."); <u>Dziedzic v. State Univ. of N.Y. at Oswego</u>, 648 F. App'x 125, 128 (2d Cir. 2016) (finding no continuing violation where the conduct was engaged in by "different co-workers in a different section of the [] department . . ."); <u>Anderson v. N.Y.C. Dep't of Fin.</u>, No. 19-cv-7971 (RA), 2020 U.S. Dist. LEXIS 70428, at *11 (S.D.N.Y. Apr. 21, 2020) (rejecting the plaintiff's continuing violation argument where "[a]s to nearly every incident, [the] [p]laintiff allege[d] that a different manager or co-worker was the source of the discrimination" and the forms of discrimination ranged "from the failure to promote him or to compensate him for overtime to being repeatedly transferred and the target of negative comments.").

Significantly, even the cases cited in Plaintiff's brief demonstrate this point.  <u>See</u> <u>Lambert v. Genesee Hosp.</u>, 10 F.3d 46, 12-14 (2d Cir. 1993) (holding that the continuing violation doctrine did not apply to the plaintiffs' claims regarding the appointment of a charge person, since "multiple incidents of discrimination . . . that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation."); <u>Gross v. NBC</u>, 232 F. Supp. 2d 58, 69 (S.D.N.Y. 2022) (dismissing as time-barred the plaintiff's claims related to "discrete, unrelated claims of discriminatory treatment by different managers which cannot form the basis of a continuing violation."); <u>Blake</u>, 2003 U.S. Dist. LEXIS 13857, at *17-20 (declining to apply the continuing violation doctrine to the plaintiff's promotion and salary

claims, since those claims constituted "discrete, individual wrongs rather than a single and indivisible course of wrongful action.").

**B.** **Plaintiff's Claims are Not Part of a *Policy or Mechanism* of Discrimination.**

In an attempt to salvage his discrete, untimely claims, Plaintiff argues that the above actions were part of an "'ongoing policy of discrimination,'" which should be considered "'timely even if they would be untimely standing alone.'" See Dkt. No. 18.1 at p. 41. (quoting Lambert, 10 F.3d at 53; Cook v. Pan Am. World Airways, Inc., 771 F.2d 635, 646 (2d Cir. 1985)). Specifically, Plaintiff conjures the following "patterns or practices" which he contends establish a link to these discrete, untimely acts: 1) that BEA would only hire individuals from Hong Kong or Asian countries "deemed comparable in status to Hong Kong" for the General Manager position; and 2) that BEA enacted a "regime change," after which it attempted "to skew its employee and manager population . . . to be younger and ensure that the employee population adheres to heterosexuality." See Dkt. No. 18.1 at pp. 42-43.

These so-called "practices" do not fall into the continuing policy exception outlined in Lambert and Cook, which only "applies to cases involving specific discriminatory policies or mechanisms such as discriminatory seniority lists, [] or discriminatory employment tests." Lambert, 10 F.3d at 53. Indeed, the vast majority of cases in which the Court identified such policies or practices are those based on a disparate impact theory of liability, challenging specific personnel

14

policies. See, e.g., Cook, 771 F.2d at 39 (applying the continuing violation doctrine to a seniority list policy, which had a disparate impact on more than 400 employees suing in a class action against the defendant); Ass'n Against Discrimination in Emp., Inc. v. City of Bridgeport, 647 F.2d 256, 274-75 (2d Cir. 1981) (determining the disparate impact of a discriminatory entry exam on African American applicants). Such policies are distinctly distinguishable from the conspiracies spun up by Plaintiff in the present action, and erroneously labeled by him as "patterns or practices."

Plaintiff's allegations are ***not*** part of a discriminatory policy or mechanism as described in Lambert, Cook, and Bridgeport, since Plaintiff fails to identify a single ***employment policy*** or ***test*** having a disparate impact on himself or other similarly situated employees as part of a class of claimants. This case is more analogous to Blake, in which the plaintiff claimed that the defendant's "allegedly discriminatory job title assignment practices generate[d] a regime in which black managerial employees achieve[d] lower levels of prominence than their white colleagues at the firm." Id. at *3. In that case, the Court clarified "a plaintiff does not properly allege an ongoing discriminatory policy simply by invoking the magic words 'pattern' or 'practice,' and [that] courts in this Circuit are skeptical when applying the doctrine in a non-class action complaint." Id. at *14-15. Like Blake, Mr. Cheong strings together a list of discrete, unrelated actions, that he baselessly

categorizes as "policies or practices" of preference for young, heterosexual individuals from Hong Kong (or "comparable" Asian countries). Without a specific test, procedure or written policy, Plaintiff's mere use of the phrase "policies or practices" does not sufficiently pull these allegations under the umbrella of the continuing violation doctrine.

\*     \*     \*

Since Plaintiff's claims arising before November 5, 2020 fall outside the statute of limitations period and cannot be considered a continuing violation, the District Court's dismissal of those claims as untimely was proper and should be affirmed. The District Court nevertheless agreed that these acts could be used as background to support Plaintiff's timely claims of discrimination and retaliation, and indeed analyzed these claims when assessing the merits of Plaintiff's various causes of action. See A-192. As explained in detail below, Plaintiff failed to state a plausible claim for relief, even considering these untimely allegations as part of his "mosaic" of evidence.

## II.  **The District Court Properly Dismissed Plaintiff's National Origin, Sexual Orientation and Age Discrimination Claims.**

Throughout his brief, Plaintiff regurgitates his nearly 400-paragraph SAC to contend that he "at the very least plausibly pled" claims of national origin, sexual orientation and age discrimination. See Dkt. No. 18.1 at pp. 9, 10, 11, 13, 18, 19, 20, 28, 40, 43, 44, 55, 56. Aside from this repetitive, self-serving statement,

Plaintiff fails to explain **how** his exceedingly long and rambling SAC demonstrates any discriminatory animus against him. Indeed, aside from the minimal case law setting forth the routine pleading standard applied to all discrimination claims, Plaintiff hardly cites to any cases at all in which a court found allegations similar to his own to state a plausible claim for relief.

To survive a motion to dismiss, a complaint must contain sufficient factual allegations which, accepted as true, "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Such plausibility exists only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "[W]hile this plausibility standard is forgiving, it is not toothless" and it "does not require [the Court] to credit 'legal conclusion[s] couched as . . . factual allegation[s]' or 'naked assertions devoid of further factual enhancement.'" Mandala v. NTT Data, Inc., 975 F.3d 202, 207 (2d Cir. 2020) (quoting Iqbal, 556 U.S. at 678). "Nor are allegations that are 'merely consistent with' liability enough to defeat a motion to dismiss." Id.

Plaintiff insists throughout his brief that the District Court failed to adhere to this pleading standard and instead held him to a heightened "evidentiary" standard, requiring him to produce "direct" evidence of discrimination to support his

claims – rather than "circumstantial" or "indirect" evidence.[8] The District Court unequivocally applied the correct standard to Plaintiff's claims and did not require Plaintiff to meet any evidentiary standard whatsoever. Indeed, the District Court cited to and applied the very same pleading standard identified in Plaintiff's brief and as set forth in <u>Littlejohn v. City of New York</u> – i.e., that Plaintiff "must only 'give plausible support to a minimal inference of discriminatory motivation' to survive BEA's motion to dismiss." <u>See</u> A-193 (quoting <u>Littlejohn</u>, 795 F.3d 297, 311 (2d Cir. 2015)).

At no point in its decision did the District Court reference a lack of documentation, testimony, affidavits or any other ***evidence*** as its reason for dismissing Plaintiff's SAC. Rather, the District Court utilized the burden-shifting framework set forth in <u>McDonnell Douglas Corp. v. Green</u> to analyze the ***allegations*** set forth in Plaintiff's SAC. Under this framework, Plaintiff must plausibly allege a *prima facie c*ase of discrimination by showing that: 1) he is a member of a protected class; 2) was qualified for the position sought; 3) suffered an adverse employment action; and 4) can sustain a minimal burden of showing facts suggesting an inference of discriminatory motivation. <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 (1973). Judge Ramos correctly determined that Plaintiff met the first three elements

---

[8] Although not relied on by the District Court in dismissing Plaintiff's claims, Plaintiff did attach several documents to his SAC, including e-mail communications, job descriptions and organizational charts from his employment with BEA, which could be considered "evidence."

of this standard with respect to his national origin (A-199), sexual orientation (A-191) and age (A-193) discrimination claims.

As explained in detail below, it is the fourth, critical element of this standard, which the District Court determined to be missing from the SAC – since the stray remarks, comparator data and subjective belief relied on by Plaintiff are insufficient to connect his protected characteristics to the adverse actions taken against him.

### A. Plaintiff's National Origin Discrimination Claims are Predicated Solely on His Baseless Belief that All Hong Kong Citizens and Companies Discriminate Against Filipinos.

To establish the fourth element of the *prima facie* standard with respect to his national origin discrimination claim, Plaintiff bases his argument on the underlying assumption that all people from Hong Kong hold some nondescript discriminatory animus against Filipinos and maintain a preference for individuals from countries considered "comparable" in status to Hong Kong – including China, Singapore, Malaysia and the United States.

As the District Court explained, "[a]lthough Cheong alleges that there is a history of racism against Filipinos by people from Hong Kong and that this resulted in him being passed over for multiple positions by non-Filipinos, these suggestive beliefs are not sufficient to form the basis of an inference of discriminatory motivation." See A-199 (citing Vega v. Hempstead Union Free

School Dist., 801 F.3d 72, 87 (2d Cir. 2015)); Felton v. Monroe Cmty. Coll., 579 F. Supp. 3d 400, 410 (W.D.N.Y. 2022) (dismissing the plaintiff's discrimination claim where he alleged that "the all-white chain of command with institutional and structural power and control saw him as inferior and not worthy of their representation."); Phillips v. Cent. N.Y. Psychiatric Ctr., No. 6:16-cv-0219, 2017 U.S. Dist. LEXIS 103313, at *13, n. 8 (N.D.N.Y. July 5, 2017) (finding that the plaintiff's "bare assertion that 'all white staff' . . . 'tried to get her out' because she is 'a minority' [wa]s not sufficient to raise an inference of discriminatory intent."). In rejecting the District Court's conclusion, Plaintiff now argues on appeal that:

1. *Benakis' promotion to the SVP position over Plaintiff, "in and of itself gives rise to an inference of discrimination" (See Dkt. No. 18.1 at p. 47);*

2. *The lower court "ignore[d] Kitty Sin's comment that Filipino borrowers 'cannot be trusted'" (Id.); and*

3. *The District Court "made no reference to Cheong's allegations of discrimination against coworkers" (Id.).*

For the reasons set forth below, Plaintiff's arguments are fatally flawed.

### i. George Benakis' Promotion, Alone, Fails to Give Rise to an Inference of Discrimination.

Plaintiff baldly asserts that the appointment of Benakis to the SVP position is sufficient to establish that Plaintiff was discriminated against based on his Filipino heritage. This is because, according to Plaintiff, Benakis is from the United States – i.e., a country of "comparable status" to Hong Kong. Notably,

however, the list of countries deemed by Plaintiff to be "comparable" in stature to Hong Kong shifts throughout the SAC and demonstrating that it is entirely of Plaintiff's own creation. For example, with respect to his lack of promotion, Plaintiff claims that Benakis (American) and Howard Hsu (Taiwanese) were promoted over him to the SVP position – despite their lesser qualifications. Plaintiff later asserts, however, that Mr. Benakis was passed over for the General Manager position in favor of Francis Wong, despite Mr. Benakis' superior qualifications; and that Maggie Wong treated Mr. Hsu poorly because of his Taiwanese national origin and status as an "American Born Chinese." In this sense, Plaintiff argues that Mr. Benakis and Mr. Hsu simultaneously received both preferential and unequal treatment because of their national origins.

Plaintiff's contradictory allegations regarding Victor Li similarly undermine this argument. In the beginning of his SAC, Plaintiff alleges that Victor Li – whom he claims is from Hong Kong and part of the "ruling Li family" – hired Plaintiff and indicated that Plaintiff "could expect advancement" at BEA. Plaintiff later argues, however, that Mr. Li was treated poorly by Ms. Wong because of his status as an "American Born Chinese." Specifically, Plaintiff alleges that Ms. Wong "repeatedly and unjustifiably criticized" Victor Li, who is from Hong Kong, to the Head Office and forced him to retire against his wishes.

As demonstrated by these allegations, Plaintiff simply alters the list of "comparable countries" (or individual comparators' national origin status) when it behooves him to do so. Plaintiff's ever-changing list of countries "comparable" in status to Hong Kong, and his contradictory claims about the individuals from those countries, actually serve to undermine his claim that all Hong Kongers discriminate against Filipino people – and therefore fails to plausibly establish a claim for national origin discrimination.

ii.    **<u>Ms. Sin's Comment About Filipino Borrowers Constitutes a Stray Remark and is Not Indicative of Discrimination Against Plaintiff.</u>**

With respect to Ms. Sin's purported comment that Filipino borrowers "cannot be trusted," Plaintiff fails to cite to any case law whatsoever that this stray remark is sufficient to demonstrate discrimination against ***Plaintiff***, himself. "In determining whether a comment should be considered a stray remark, courts consider who made the remark, when the remark was made in relation to the [adverse action], the content of the remark, and the context in which the remark was made." <u>Roenick v. Flood</u>, No. 20-cv-7213 (JPC), 2021 U.S. Dist. LEXIS 108165, at \*17-18 (S.D.N.Y. June 9, 2021). "Remarks are especially likely to be 'stray' when made by a decision maker unrelated to the decision-making process [and] temporally remote from the date of [the] decision." <u>Id</u>. at \*18.

On its face, Ms. Sin's remark is unrelated to **Plaintiff**, or any adverse action taken against him, specifically. Rather, this one-off comment was purportedly made in reference to loans being made to Filipino **borrowers** at BEA. Plaintiff contends, based on this single comment, that "it is plausible that [Ms. Sin] held the same view of Filipino **lenders**" (presumably referring to Plaintiff). See Dkt. No. 18.1 at p. 47 (emphasis added). Notably, however, courts in this Circuit routinely hold that comments not directed at the plaintiff, by their nature, constitute stray remarks and are insufficient to state a claim of discrimination. See Phillips v. Centrix, Inc., 354 F. App'x 527, 529 (2d Cir. 2009) (finding that "the two remarks by [the] defendant's employees . . . – neither of which were directed at [the plaintiff] – reflect[ed] little, if any, age-based discriminatory animus."); Williams v. Victoria's Secret, 2017 U.S. Dist. LEXIS 45813, at *20-21 (S.D.N.Y. Mar. 28, 2017) (holding that comments that were "not directed at [the] [p]laintiff" were "non-actionable stray remarks."); Lombardi v. Choice Women's Med. Ctr., Inc., No. 15-cv-4715 (PUG)(JLC), 2017 U.S. Dist. LEXIS 11935, at *29-30 (E.D.N.Y. Jan. 26, 2017) (holding that a stray comment regarding an employee other than the plaintiff was "insufficient as a matter of law to state a claim for discrimination.").

Moreover, Plaintiff himself admits that Ms. Sin was not in his direct reporting line, and that this comment was not made in connection with adverse actions against him. See Dkt. No. 18.1 at p. 47. Plaintiff nevertheless contends that

it is ***possible*** Ms. Sin maintained control over the material terms of his employment, since some unidentified individuals in her department would have had to approve Plaintiff's loans. Id. The pleading standard requires ***plausibility*** – not ***possibility*** – and this far-fetched conclusion is unsupported by any other allegations in Plaintiff's SAC. Nevertheless, Plaintiff's argument is once again undermined by his own allegations. Specifically, Plaintiff simultaneously claims that he achieved $200,000,000 in loans in 2018 (A-19 at ℙ 69) and $230,000,000 in 2020 (A-31 ℙ 154) – all of which would presumably have been approved by Ms. Sin's department. Indeed, Plaintiff boasts that on numerous occasions, he outperformed his Chinese, American and Taiwanese counterparts in loan solicitation/approval. Moreover, Plaintiff's SAC is devoid of any allegations that he had trouble obtaining approval for these loans from Ms. Sin or anyone else in the risk management department. Plaintiff cannot now, for the first time on appeal, contradict these allegations and conjure some newfound discriminatory action on the part of Ms. Sin.

Without any link between Ms. Sin's purported comment and adverse taken against Plaintiff, specifically, it cannot be used to support Plaintiff's national origin discrimination claim.

24

### iii. Plaintiff Cannot Rely on the Alleged Treatment of his Non-Similarly Situated Coworkers to Establish a Claim of National Origin Discrimination.

Plaintiff's allegations of discrimination against his coworkers – specifically, Mr. Hsu and Susan Chan – are equally unavailing. First, Plaintiff relies on Sprint/United Mgmt. Co. v. Mendelsohn to contend that Mr. Hsu's "confession" that "Wong disrespected [him] in front of other New York Branch staff" should be used to bolster Plaintiff's own national origin discrimination claim, since "[e]vidence of similar discrimination against other coworkers can support claims under Title VII." See Dkt. No. 18.1 at p. 47 (citing Sprint, 552 U.S. 379, 388 (2008)).

Sprint is easily distinguishable from the allegations pled in Plaintiff's SAC. In Sprint, *five* of the plaintiff's coworkers *testified, under oath*, that they and the plaintiff were subjected to age discrimination. Plaintiff's attempt to draw a parallel between this comment and the comment allegedly made by Mr. Hsu is absurd. This testimony, given in support of the Sprint plaintiff's claims on trial, differs substantially from the one-off comment Plaintiff attributes to Mr. Hsu, which bears absolutely no connection whatsoever to his national origin, race or any other protected characteristics. Specifically, Plaintiff claims that Mr. Hsu said "Defendants' Head Office should properly train managers before sending them to overseas offices where the customs and legal environments are different." See A-26 at ⁋ 115. This comment, unlike those in Sprint, was not made under oath or in

support of any sort of claim for discrimination, and is entirely unrelated to Mr. Hsu's national origin or any other protected characteristic.

Second, Plaintiff asserts that Ms. Chan was considered "American Born Chinese" and was demoted during her employment with BEA. However, Plaintiff does not even share any protected characteristics with Ms. Chan, and there are no allegations whatsoever, which would suggest that Plaintiff (Head of BDD) and Ms. Chan (CFO) were in the same department, reported to the same supervisors or were otherwise similarly situated in any way. Significantly, "adverse actions taken against employees who are not similarly situated cannot establish an inference of discrimination." Littlejohn, 795 F.3d at 312. As such, Plaintiff cannot rely on the treatment of Ms. Chan to demonstrate that he, as a non-similarly situated Filipino man, was discriminated against based on his national origin.

\* \* \*

In conclusion, Plaintiff's contradictory allegations regarding the treatment given to non-Filipino workers and the stray remark he attributes to Kitty Sin, are insufficient to demonstrate his overarching accusation that BEA (and indeed all Hong Kong based employers) discriminate against Filipino employees. As such, the dismissal of Plaintiff's national origin discrimination claim should be affirmed.

**B.    The District Court Correctly Concluded that Plaintiff's Subjective Interpretation About the Innocuous Comments Made by Maggie Wong and Plaintiff's Coworkers are Insufficient, as a Matter of Law, to State a Plausible Claim of Sexual Orientation Discrimination.**

To establish the fourth element of the *prima facie* standard with respect to his sexual orientation discrimination claim, Plaintiff points to the innocuous conduct and comments by Ms. Wong and his coworkers.  Specifically, Plaintiff alleges that, when issuing Plaintiff's PIP, Ms. Wong informed Plaintiff that people were "talking behind [his] back."  See A-21 at ⁋ 80.  Although Ms. Wong did not explain "who was talking or what was being said," Plaintiff, without any basis whatsoever, interpreted her comment to be "weaponizing his sexual orientation . . ." Id.  Plaintiff further claims that one of his coworkers "surreptitiously searched [his] desk and phone" and questioned with whom Cheong vacationed.  See Dkt. No. 18.1 at p. 50.  According to Plaintiff, Ms. Wong and his coworkers engaged in this facially neutral conduct because "being gay is taboo in Hong Kong," and since everyone in that geographic region purportedly holds discriminatory animus against members of the LGBTQIA+ community.  This absurd assertion borders on paranoia and is the exact opposite of the "objective, indirect evidence" on which Plaintiff purports to base his claims.  Id.

The District Court properly held that Plaintiff's "subjective interpretation of the[se] events, without more, does not provide evidence of an intent

to discriminate." See A-197 (citing Vega, 801 F.3d at 87; Smith v. Bronx Cmty. Coll. Ass'n, No. 16-cv-3779 (JMF), 2017 U.S. Dist. LEXIS 25632, at *2 (S.D.N.Y. Feb. 23, 2017)); see also Fleming v. MaxMara USA, Inc., 371 Fed. App'x 115, 119 (2d Cir. 2010) (holding that a comment could not support the plaintiff's discrimination claims because the plaintiff "d[id] not allege any fact to connect th[e] comment to her other allegations of unfair treatment, which [we]re not facially related to her race."); Paupaw-Myrie v. Mount Vernon City Sch. Dist., No. 21-cv-11237 (CS), 2023 U.S. Dist. LEXIS 15505, at *20-21 (S.D.N.Y. Jan. 30, 2023) (holding that the plaintiff's subjective belief that comments – which contained no direct reference to the plaintiff's membership in a protected class – were somehow discriminatory in nature, were insufficient to withstand the defendant's motion to dismiss); Pompey-Primus v. Success Academy Charter Sch., Inc., No. 21-cv-3981 (KPF), 2022 U.S. Dist. LEXIS 29313, at *17 (S.D.N.Y. Feb. 17, 2022) ("While [the] [p]laintiff may have found [her supervisor's] comment surprising and offensive, absent additional detail linking the statement to [the plaintiff's] [protected characteristic], it does not plausibly suggest a discriminatory motive."); Luka v Bard. Coll., 263 F. Supp. 3d 478, 487 (S.D.N.Y. 2017) (observing that "[i]solated comments, while potentially offensive, do not lead to an inference of discriminatory intent.").

\*     \*     \*

Without any other allegations, aside from these facially neutral comments, linking Plaintiff's sexual orientation to the purported adverse actions taken against him, the District Court's decision dismissing that claim should be affirmed.

### C. Plaintiff's Allegations Do Not Demonstrate a Conspiracy of Age Discrimination at BEA.

To establish the fourth element of the *prima facie* standard with respect to his age discrimination claims, Plaintiff alleges that BEA engaged in a "campaign to change [its] demographics to skew dramatically younger," and that, as part of this "campaign," BEA promoted and hired young employees for managerial positions. See A-9 at ⁋ 7. Plaintiff further references the "coincidental[] retirement" of three senior risk management employees, as well as Victor Li's retirement, which he argues were implemented as part of this conspiratorial regime change. A-27 at ⁋ 131.

To support this conspiratorial claim, Plaintiff argues that Defendants instituted some vague practice of removing and replacing older employees. Plaintiff fails to connect this so-called "regime change," however, to any adverse actions taken against **him**, specifically. Plaintiff's reliance on the treatment of **other** older workers who were forced into retirement is insufficient, as a matter of law, to state a plausible claim of age discrimination, since he does not assert facts to suggest the dates of these individuals' retirement, the reasons given for their retirement or

29

whether it was even the Li family who perpetrated this "campaign." See, e.g., Al-Qadaffi v. Servs. for the Underserved, 632 Fed. App'x 31, 32 (2d Cir. 2016) (affirming the dismissal of the plaintiff's ADEA claims where he "d[id] not allege the ages of the people hired instead of him or any other facts from which a court could draw a plausible inference of discrimination."); Marcus v. Leviton Mfg. Co., 661 Fed. App'x 29, 32 (2d Cir. 2016) (affirming the dismissal of the plaintiff's age discrimination claims, despite his assertion that "the defendant was attempting to get 'younger' by terminating older employees and replacing them with younger hires," since the complaint was "nearly bereft of any specific facts to support this conclusion, " such as "dates, ages, or reasons with respect to the termination of other employees."); Lively v. WAFRA Inv. Advisory Grp., Inc., No. 19-cv-3257 (JPO), 2020 U.S. Dist. LEXIS 126390, at *12-13 (S.D.N.Y. July 17, 2020) (dismissing the plaintiff's age discrimination claims because his general allegation that the company was engaging in a "campaign to purge the company of elders [sic] workers" by "terminating or forcing out many of its senior executives" did not suffice to meet his burden, and since the complaint lacked specific facts regarding "dates, ages, or reasons with respect to the termination of the other employees.").

Plaintiff attempts to salvage this claim on appeal by arguing that he, himself, was replaced and passed over for promotion in favor of younger employees – i.e., Howard Hsu (*one year* younger than Plaintiff) and Maggie Wong (*seven years*

30

younger than Plaintiff). [9]  See A-17 at ¶ 57; A-24 at ¶ 100.  Although Plaintiff acknowledges the emphasis placed by courts on the replacement of older employees with *"substantially younger"* individuals to demonstrate age discrimination, he fails to apply this reasoning to his own allegations – presumably since doing so would bely any suggestion of age discrimination.  Ms. Wong, and certainly Mr. Hsu, are, as a matter of law, "insignificantly younger" than Plaintiff.  As such, no inference of discrimination can be drawn from their taking over Plaintiff's job responsibilities or being promoted over him.  See Lomonoco v. St. Anne Inst., 768 Fed. App'x 43, 44 (2d Cir. 2019); see also Pustilnik v. Battery Park City Auth., No. 9:18-cv-215, 2019 U.S. Dist. LEXIS 208527, at *12-13 (S.D.N.Y. Dec. 3, 2019) (dismissing the plaintiff's age discrimination claims where the plaintiff alleges she was terminated and replaced by an employee *seven years* her junior, since this replacement was not "substantially younger" than her); Spires v. Metlife Grp., Inc., No. 18-cv-4464 (RA), 2019 U.S. Dist. LEXIS 160181, at *7 (S.D.N.Y. Sept. 18, 2019) (holding that the plaintiff's conclusory allegation that they were replaced by someone "substantially younger" and less qualified did not raise an inference of discriminatory intent).

    Finally, Plaintiff contends that the District Court erred in "rest[ing] its decision on the fact that 'Wong made no reference to Cheong's age" during his

---

[9] It should be noted that, in his appellate brief, Plaintiff erroneously argues that Ms. Wong is "a decade younger" than him.  See Dkt. No. 18.1 at p. 55.  As clearly stated in Plaintiff's SAC, however, Ms. Wong is only *seven (7) years* younger than Plaintiff.  See A-17.

employment with BEA, and critiques Judge Ramos' reliance on <u>Dunaway v. MPPC Corp</u>, 669 Fed. App'x 21 (2d Cir. 2016). Specifically, Plaintiff argues that <u>Dunaway</u> is inapplicable to the present action, since it was decided on a motion for summary judgment – rather than a motion to dismiss.

Plaintiff's argument once again misses the mark. Although <u>Dunaway</u> was decided on a motion for summary judgment, it is nevertheless instructive for the purpose relied upon in the District Court's decision. In <u>Dunaway</u>, the president of the defendant-company made several references to age during the plaintiff's interview, including a comment about his "septuagenarian father who was no longer running the company"; and a question about whether the plaintiff, who was 65 years-old, was "capable of withstanding the vigors [sic] of the position." <u>Id</u>. at 22. This Court determined that, even despite these comments, the plaintiff could not establish a claim for age discrimination, since "'an employer's concern about the economic consequences of employment decisions,' such as the likelihood of an employment candidate's retirement within a short timeframe, 'does not constitute age discrimination under the ADEA, even though there may be a correlation with age.'" <u>Id</u>. at 23 (quoting <u>Criley v. Delta Air Lines, Inc.</u>, 119 F.3d 102, 105 (2d Cir. 1997)).

The District Court pointed out that, in <u>Dunaway</u>, the Second Circuit affirmed the dismissal of the plaintiff's claims because, aside from these comments, he failed to link the purported adverse action to his age. Judge Ramos found this

case to be "instructive," since Plaintiff similarly failed to assert any allegations tending to demonstrate that the adverse actions against him were related to his age. In fact, Mr. Cheong includes even fewer allegations related to his age than the plaintiff in <u>Dunaway</u>, who at least alleged some sort of age-based comments. Nevertheless, the Second Circuit found Dunaway's claims insufficient to withstand a dispositive motion.  It logically follows, therefore, that even accepting as true the allegations pled in Plaintiff's SAC, he, too, cannot establish a claim for age discrimination.  <u>See, e.g.</u>, <u>Avgerinos v. Palmyra-Macdedon Cent. Sch. Dist.</u>, 690 F. Supp. 2d 115, 130 (W.D.N.Y. 2010) (granting the defendant's motion to dismiss where "[t]here were no allegations by [the] plaintiff that any member of the [defendant school district] made any discriminatory comments relating to her age" and where she "did not allege that any other member of the [district] engaged in any over discriminatory conduct toward [her] concerning [her] age."); <u>Castagna v. Luceno</u>, No. 09-cv-9332 (CS), 2011 U.S. Dist. LEXIS 45567, at *39 (S.D.N.Y. Apr. 26, 2011) (dismissing the plaintiff's complaint where it did not contain any allegations that his supervisor, "or anyone else . . . made facially age-discriminatory comments or treated older employees differently . . .").

*       *       *

Without any allegations suggesting an inference of age discrimination, such as favorable treatment of employees substantially younger than Plaintiff or age-

based comments by supervisors and coworkers, Plaintiff fails to plausibly allege a claim of age discrimination. Plaintiff's allegations regarding the "campaign" against younger workers at BEA are conclusory in nature, and his other allegations simply fall short of giving rise to a plausible claim of age discrimination. As such, the District Court's decision dismissing this claim should be affirmed.

### D. Plaintiff Cannot Rely on His Lack of Promotion to Demonstrate Discriminatory Animus Because He Did Not Apply For, or Express Any Interest in, the Positions Identified in the SAC.

To support each of his discrimination causes of action, Plaintiff argues generally that BEA passed him over for promotion to the General Manager and SVP positions, in favor of individuals who were younger, from countries designated by Plaintiff as "comparable" to Hong Kong and (at least to Plaintiff's knowledge) heterosexual – including Maggie Wong[10] (Chinese), Francis Wong (Chinese) and George Benakis (American). See Dkt. No. 18.1 at pp. 48-49 (Defendants "never afforded Cheong the benefit of applying for its General Manager position."); p. 51 ("Those holding themselves out as heterosexual repeatedly passed over Cheong and assumed his roles."); p. 54 ("Cheong alleges that BEA did not post the SVP positions

---

[10] According to Plaintiff, Ms. Wong was given the General Manager position and transferred to the New York Branch because she is "well connected" to Co-Chief Executive Officer, Brian David Li Man-bun. See A-17 at ⁋ 58. Significantly, however, "failure to promote claims are meant to address workplace discrimination, not nepotism." Fleurentin v. N.Y. City Health & Hosps. Corp., No. 18-cv-05004 (AMD)(RLM), 2020 U.S. Dist. LEXIS 908, at *17 (E.D.N.Y. Jan. 3, 2020); see also Rowe v. N.Y. State Dep't of Taxation & Fin., 786 Fed. App'x 302, at *2 (2d Cir. 2019) (finding that allegations of nepotism are insufficient to raise an inference of discrimination).

it gave to Wong in 2018, and he further alleges that the [sic] gave that position to Hsu in February 2020, and to Benakis in February 2021."). Plaintiff also identifies a number of individuals who received promotions to a variety of other positions at BEA, including James Hua (Taiwanese) to the Deputy General Manager, Corporate Banking position; Colin Chong Tan (Malaysian) to the Deputy General Manager, Risk Management position; Helen Shek (Chinese) to the Vice President & Business Manager position; and Ada Lau (Chinese) to the Vice President & Manager, Corporate & Retail Support Services position. See A-56-57 at ¶¶ 323-31.

To plausibly plead a failure-to-promote claim, Plaintiff must allege: "1) that he is a member of a protected class; 2) that he applied for a promotion to a position for which he was qualified; 3) that he was rejected for the position; and 4) after this rejection, the position was filled by someone outside the protected class who was similarly or less well qualified than [him]." Lopez v. N.Y.C. Dep't of Educ., No. 17-cv-9205 (RA), 2020 U.S. Dist. LEXIS 133548, at *16 (S.D.N.Y. July 28, 2020); see also Rivera v. JP Morgan Chase, 815 Fed. App'x 603, 606 (2d Cir. 2020) (holding that a plaintiff must allege "he applied for a specific position . . . and was rejected therefrom, rather than merely asserting that . . . he generally requested promotion.") (internal quotations and citations omitted).

As set forth in detail below, Plaintiff fails to plausibly allege the second, third and fourth elements of the *prima facie* standard with respect to his failure-to-

promote claims. Defendants raised this same argument in their original brief, and the District Court similarly determined that "Cheong does not show that he applied for and was rejected from any of the positions that he sought in the SAC." <u>See</u> A-197, n. 14. Tellingly, Plaintiff failed to correct these deficiencies in his Second Amended Complaint or address this argument on appeal. Indeed, Plaintiff's brief does not even include the *prima facie* standard for establishing a failure-to-promote claim. This is no doubt due to the fact that, as set forth in detail below, the claims fail as a matter of fact and law.

### i. <u>Plaintiff Never Applied for or Was Rejected from Any of the Roles Identified in the SAC.</u>

Plaintiff's failure to promote claims fail for the simple reason that he did not apply for, and was not rejected from, any of the roles identified in his SAC. Specifically, Plaintiff does not indicate that he ever applied to the General Manager, Deputy General Manager, Risk Management, Vice President & Business Manager or Vice President & Manager, Corporate & Retail Support Services positions – let alone was rejected from them. <u>See</u> <u>Hollington v. CDM Fed. Programs Corp.</u>, No. 22-cv-4940 (ER), 2023 U.S. Dist. LEXIS 40887, at *20-21 (S.D.N.Y. Mar. 10, 2023) (dismissing the plaintiff's failure to promote claims because he did not "identify specific positions that he applied to."); <u>Semerano v. Woodner Co.</u>, No. 17-cv-8535 (ER), 2018 U.S. Dist. LEXIS 110566, at *9 (S.D.N.Y. July 2, 2018) ("While Second Circuit case law provides that a failure to promote may constitute

an adverse employment action . . ., in order to state such a claim, a plaintiff must show that he 'applied for a position and was rejected,' . . . a factual allegation that is wholly lacking here.").

Plaintiff argues that he did not apply for these positions because they were not posted.  Although a plaintiff need not plead a "specific application" where "1) the vacancy at issue was not posted, and 2) the employee either had a) no knowledge of the vacancy before it was filled or b) attempted to apply for it through informal procedures endorsed by the employer," Plaintiff fails to plead any factual allegations to indicate that these exceptions were present in this case.  Specifically, Plaintiff fails to allege in his SAC that he had no knowledge of the various vacancies before they were filled; or that he ever attempted to apply to those vacancies through informal procedures.  Indeed, Plaintiff fails to allege that he even "indicated to [BEA] an interest in being promoted to a particular class of positions" or that he intended to apply to any of these roles.  See Beverly v. N.Y.C. Health & Hosps. Corp., No. 18-cv-8486 (ER), 2020 U.S. Dist. LEXIS 176741, at *13 (S.D.N.Y. Sept. 25, 2020).  Nor does Plaintiff plausibly allege that "timing and manner in which the positions were sought" by him.  Lopez, 2020 U.S. Dist. LEXIS 133548, at *16, n. 5. Although Plaintiff alleges generally that he should have been considered for each of these positions, "[m]erely expressing an interest in a position is insufficient to

support a failure to promote claim." <u>Sethi v. Narod</u>, 12 F. Supp. 3d 505, 525-26 (E.D.N.Y. 2014).

### ii. **Plaintiff Fails to Plausibly Allege that He Was More Qualified than the Individuals Promoted Over Him.**

Plaintiff further fails to plausibly allege that the individuals promoted over him were less qualified for their respective positions. To support an inference that employees outside of Plaintiff's protected class were treated more favorably and promoted over him, Plaintiff must "compare [] [himself] to employees who are similarly situated in all material respects" to himself. <u>Hollington</u>, 2023 U.S. Dist. LEXIS 40887, at *19 (internal quotations and citations omitted).

Plaintiff fails to plausibly allege that he was more qualified than Maggie Wong, Francis Wong and George Benakis. In fact, the only support for Plaintiff's assertion that he was more qualified for any given role is that he has an MBA from Harvard. Plaintiff's subjective belief that his Harvest degree carries more weight than, say, Maggie Wong's numerous years of working for BEA's Head Office in Hong Kong or Francis Wong's 25 years of banking experience, or even George Benakis' law degree, is simply insufficient to demonstrate that he was more qualified than them for their respective positions. Plaintiff's conclusory allegation that his Harvard MBA trumps any other qualification or degree, is "too vague to plausibly establish an inference of discrimination." <u>Id</u>. at *20; <u>see also</u> <u>Fleurentin</u>, 2020 U.S. Dist. LEXIS 908, at *18 (dismissing the plaintiff's Title VII, NYSHRL and

38

NYCHRL failure to promote claims where he failed to plausibly allege facts to suggest that he was more qualified than the individual who received a promotion over him).

*    *    *

Plaintiff's failure to plausibly allege that he actually applied to, was rejected from or more qualified for these positions – and his failure to even address this argument in his appellate brief – warrants the dismissal of his failure-to-promote claims.

## III.   The District Court Properly Dismissed Plaintiff's Retaliation Claims, Since the Progressive Performance Management Issued to Plaintiff Commenced *Years* Before His Engagement in Protected Activity.

A plaintiff alleging retaliation must demonstrate that: "1) [he] was engaged in protected activity; 2) the employer was aware of that activity; 3) the employee suffered a materially adverse action; and 4) there was a causal connection between the protected activity and that adverse action."  Chung v. City Univ. of N.Y., 605 Fed. App'x 20, 23 (2d Cir. 2015).  As the District Court noted, Plaintiff "must plausibly demonstrate that the alleged retaliation was a 'but-for' cause of [BEA's] actions."  See A-200-01 (citing Vega, 801 F.3d at 90).

Although not clear from Plaintiff's SAC which purported retaliatory action is linked to each "protected activity" allegedly engaged in by Plaintiff, he appears to argue the following in his appellate brief:

*1. Eleven minutes after he complained to Human Resources representative, Lauren Lemole on May 14, 2021, Ms. Wong informed Plaintiff that Benakis was "mainly responsible for soliciting business for the department."*

*2. After Plaintiff filed his September 2021 EEOC Charge, he was "excluded from a companywide survey, faced impediments in originating loans in late 2021 and early 2022, and received a performance rating of 2 out of 5 at his next performance evaluation in January, 2022."*

*3. After filing his October 2022 District Court Complaint, Benakis issued him a low performance score in January 2023.*

*4. After Plaintiff filed his Amended Complaint on April 5, 2023, he was subsequently terminated on April 25, 2023.*

These claims fail as a matter of law. First, Plaintiff cannot establish a causal connection between his May 14, 2021 complaint to Ms. Lemole and Ms. Wong's comment that Mr. Benakis' responsibility was to solicit loans. According to Plaintiff, Ms. Wong made this comment in reference to the fact that Plaintiff had been "demoted" to the Business Manager position, while Mr. Benakis took over the SVP responsibilities – including soliciting loans. This allegation belies logic, since Ms. Wong changed Plaintiff's title to Business Manager on May 3, 2021 and had placed Plaintiff on the PIP even earlier – on April 30, 2021. It cannot logically follow, therefore, that this title change and shift in job responsibilities was in retaliation for a complaint that Plaintiff had not yet been made – and indeed would not make until nearly two weeks *later* on May 14, 2021. See Lees v. Graduate Ctr., 696 Fed. App'x 530, 531 (2d Cir. 2017) (affirming dismissal of the plaintiff's

retaliation claims since she did not begin engaging in protected activity until after her supervisor subjected her to alleged unfair treatment).  Moreover, where, as here, "timing is the only basis for a claim of retaliation, and gradual adverse job actions began well *before* the plaintiff had ever engaged in any protected activity, an inference of discrimination does not arise."  Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 95 (2d Cir. 2011) (emphasis added).

Moreover, merely reiterating that shift in responsibilities "eleven minutes" after Plaintiff's complaint to Human Resources is more plausibly coincidental than retaliatory.  In any event, this does not even rise to the level of adverse action required to establish a claim for retaliation, since it would not "deter a reasonable employee from complaining about discrimination."  Nunez v. Lima, 762 Fed. App'x 65, 69-70 (2d Cir. 2019); see also Weeks v. New York State (Div. of Parole), 273 F.3d 76, 85-86 (2d Cir. 2001) (holding that notice of discipline that had no material effect was not adverse for disparate treatment and retaliation claims) (abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002)).

Second, Plaintiff cannot establish a causal connection between his September 2021 EEOC Charge and the non-descript "impediments" to soliciting loans in "late 2021 and early 2022" or his January 2022 performance evaluation – since these alleged actions are too temporally attenuated to plausibly demonstrate

any retaliatory motive.  See Farooq v. City of N.Y., No. 20-cv-3185, 2022 U.S. App. LEXIS 6739, at *10 (2d Cir. Mar. 16, 2022) (affirming dismissal of the plaintiff's retaliation claim because a "five-month temporal gap [], standing alone, is insufficient to plead causation."); Perry v. NYSARC, Inc., 424 Fed. App'x 23, 26 (2d Cir. 2011) (noting that the Second Circuit has "concluded that even a four-month interval between protected activity and alleged retaliation is insufficient in itself to establish the causal connection necessary to support a retaliation claim.").

Third, Plaintiff's allegation that Francis Wong retaliated against him for filing the present action in October 2022 is similarly deficient.  There is nothing in the SAC to suggest that Mr. Wong would hold some retaliatory animus against Plaintiff for filing his original Complaint in October 2022 – since the only mention of Mr. Wong in Plaintiff's original Complaint was that he would be taking over for the General Manager position as of 2023.  See SA-28-29 at ¶¶ 278-82.[11]  In any event, Plaintiff's October 2022 Complaint and January 2023 performance review are also too temporally remote to suggest a plausible inference of retaliation.  See Hollington, 2023 (U.S. Dist. LEXIS 40887, at *30 (quoting Summa v. Hofstra Univ., 708 F.3d 115, 125 (2d Cir. 2013) ("While there is 'no firm outer limit to the temporal proximity required . . . most courts in the Second Circuit have held that a lapse of time beyond two or three months will break the causal inference.").

---

[11] References to the Supplemental Appendix are cited as (SA-__).

42

Finally, as explained by the District Court, Plaintiff does not plausibly allege that his termination was causally connected to the filing of his Amended Complaint. Although Defendants did not initially move to dismiss Plaintiff's retaliation claim in connection with his termination, dismissal was nevertheless proper, since "[a] district court's ability *sua sponte* to dismiss a complaint that lacks a basis in law or fact is well-established." Muka v. Murphy, 358 Fed. App'x 239, 241 (2d Cir. 2009); see also Freund v. Cnty. Of Nassau, No. 15-cv-6180, 2017 U.S. Dist. LEXIS 26306, at *10 (E.D.N.Y. Feb. 24, 2017) ("Although Defendants did not move to dismiss these claims, the Court finds that they fail as a matter of law and dismisses them *sua sponte*."); McKnight v. Middleton, 699 F. Supp. 2d 507, 533 (E.D.N.Y. 2010) (dismissing *sua sponte* the plaintiff's "conclusory, vague, or general allegations of conspiracy . . .") (aff'd by McKnight v. Middleton, 434 Fed. App'x 32 (2d Cir. 2011)).

The District Court properly dismissed Plaintiff's retaliation claim based on his termination, since "nothing in his [SAC] indicates that [his termination] would not have [occurred] but-for his filing of the [SAC]." See A-201. Specifically, the District Court explained that, prior to his termination, Plaintiff "had already received multiple low performance reviews, was struggling to work with Benakis, and was no[t] considered for various promotions, well before he filed the instant lawsuit." Id. at A-201-02. These "'gradual adverse job actions began well before the plaintiff

had ever engaged in any protected activity,'" and as such – as the District Court properly noted – "'an inference of [retaliation] does not arise.'" See A-202 (quoting Slattery, 248 F.3d at 95; Lees, 696 Fed. App'x at 531).

On appeal, Plaintiff critiqued the District Court's reliance on Slattery, since that case "considered a two-year interval between the protected conduct and the retaliatory activity, whereas Cheong faced retaliatory activity immediately after his internal May 2021 complaint . . ." See Dkt. No. 18.1 at p. 58.[12] Plaintiff conveniently omits from this reasoning his other allegations of performance management, which, according to the SAC, commenced as early as 2019 – *years* before Plaintiff engaged in any protected activity. The fact that Plaintiff's performance management commenced long before he ever engaged in any protected activity undermines this claim and warrants its dismissal. See Canady, 2022 U.S. App. LEXIS 35263, at *6-7 (dismissing the plaintiff's retaliation claim, where he "allege[d] that the [d]efendants retaliated against him even before he" engaged in protected activity); Russo v. N.Y. Presbyterian Hosp., 972 F. Supp. 2d 429, 456 (E.D.N.Y. 2013) (holding that where, as here "[a]n employer's continuation of a course of conduct [] beg[a]n before the employee complained," such conduct cannot

---

[12] Plaintiff also critiqued the District Court's reliance on Slattery because it dealt with a motion for summary judgment – rather than a motion to dismiss. Significantly, however, several courts in this Circuit, including the Court of Appeals, have similarly relied on this case when deciding a Rule 12(b)(6) motion. See, e.g., Canady v. U of R/Strong Mem'l Med. Ctr., No. 21-cv-2150, 2022 U.S. App. LEXIS 35263, at *6-7 (2d Cir. Dec. 21, 2022); Cayemittes v. City of N.Y. Dep't of Hous. Pres. & Dev., 641 Fed. App'x 60, 62 (2d Cir. 2016); Chung, 605 Fed. App'x at 23.

"constitute retaliation because . . . there is no causal connection between the employee's protected activity and the employer's challenged conduct.").

\* \* \*

Since Plaintiff fails to plausibly allege that his complaints of discrimination were in any way causally connected to any adverse employment action, his retaliation claims fail as a matter of law.

## CONCLUSION

For these reasons, the Court should 1) affirm the District Court's March 29, 2024 Opinion and Order; and 2) grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

JACKSON LEWIS P.C.

666 Third Avenue, 29th Floor
New York, New York 10017

Dated: August 7, 2024          By:    _/s Lori D. Bauer_____
      New York, New York          Lori D. Bauer
                                          Laura A. Victorelli

                                          ATTORNEYS FOR
                                          DEFENDANTS-APPELLEES

## <u>CERTIFICATE OF COMPLIANCE</u>

This Brief complies with the type-volume limitation of FRAP 32(a)(7)(B) and Local Rule 32.1(a)(4) because it contains 10,909 words, excluding the parts of the document exempted by FRAP 32(f).

This Brief complies with the typeface requirements of FRAP 32(a)(5)(A) and the type-style requirements of FRAP 32(a)(6) because it is in 14-point Times New Roman proportional font.

*/s Laura A. Victorelli*
Laura A. Victorelli


Dated:        August 7, 2024

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 7, 2024, I filed the foregoing brief with the Clerk of this Court using the CM/ECF system, which will send electronic notice of such filing to counsel of record for all parties.

*/s Lori D. Bauer*

Lori D. Bauer

Dated: August 7, 2024